# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

MICHAEL G. TATE,                     )
                                     )
                                     )     CIVIL ACTION NO. 0:08-1619-HFF-JRM
                    Petitioner,      )
                                     )
v.                                   )     **REPORT AND RECOMMENDATION**
                                     )
TIM RILEY,                           )
                                     )
                    Respondent.      )
_____)

Petitioner, Michael G. Tate ("Tate"), is an inmate with the South Carolina Department of Corrections serving a sentence of fifteen (15) years for accessory before the fact of an armed robbery, five (5) years for two (2) counts of third-degree burglary, and one (1) year for unlawful carrying of a pistol. The court also revoked Tate's probation and sentenced him to one (1) year.[1] All sentences are concurrent. On April 18, 2008, Tate filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case was automatically referred to the undersigned pursuant to Local Rule 73.02(B)(2)(c) and (e) (D.S.C.). Respondent filed a motion for summary judgment on August 15, 2008. An order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was entered on August 19, 2008. After several extensions of time, Tate filed his response to the motion for summary judgment on December 5, 2008.

---

[1]Petitioner was on probation for distribution of crack cocaine within proximity of a school, a serious offense.

## Background and Procedural History

Tate was on probation for distribution of crack cocaine within close proximity to a school in the summer of 2002. During this period he, along with co-defendants, committed several robberies and break-ins in Cherokee County. Tate was arrested and was represented by William E. Winter, Jr., Esquire, He began a negotiated plea on February 11, 2003 pursuant to a plea agreement. When Tate expressed questions on the court's sentencing options, the trial judge adjourned the hearing to allow Tate further opportunity to consult with Mr. Winter. (App. 15). The hearing was resumed and the guilty plea and sentencing was completed the next day.

## Direct Appeal

Tate did not file a direct appeal.

## Post-Conviction Relief ("PCR")

Tate filed a PCR application on July 9, 2003. (App. 43). An evidentiary hearing was held on January 11, 2005. Tate and Mr. Winter testified. Tate was represented by Michael D. Hamrick, Esquire. (App. 59). The PCR court issued its order of dismissal on May 24, 2005.

Tate filed a *pro se* motion to amend the judgment of the PCR court and a *pro se* notice of intent to appeal. The South Carolina Supreme Court dismissed the appeal on June 15, 2005 due to the motion pending in the circuit court. The PCR court denied the motion to amend the judgment on February 13, 2006. (App. 105). Tate filed a second notice of appeal, and a Johnson[2] petition for writ of certiorari was filed on Tate's behalf by the South Carolina Commission on Indigent Defense raising the following issue:

---

[2] Johnson v. State, 364 S.E.2d 201 (S.C. 1988); see also Anders v. California, 386 U.S. 738 (1967).

2

The PCR court erred in denying petitioner's allegations that he did not knowingly and voluntarily waive his right to a direct appeal in the case.

Tate filed a *pro se* petition but a copy is not included in the record before this Court. The petition for writ of certiorari was denied by the South Carolina Supreme Court on July 3, 2007. The Remittitur was returned on July 23, 2007.

## Grounds for Relief

In his present petition Tate asserts that he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:**                Ineffective Assistance of Counsel.

**Supporting Facts:**     He didn't investigate the case. He advised me [to] plea[d] guilty to a charge where no statement involved me. He allowed things to happen that he should have ask[ed] to dismiss, which induced subject matter jurisdiction/ personal jur[is]diction / amendment violations.

**Ground Two:**           Subject Matter Jurisdiction.

**Supporting Facts:**     The violation of grand jury procedure, lack of probable cause, and lack of personal jurisdiction.

**Ground Three:**         Violation of Amendments 4th/ 14th/ 6th .

**Supporting Facts:**     Lack of probable cause. My lawyer was ineffective.

**Ground Four:**          Involuntary Guilty Plea.

**Supporting Facts:**     My lawyer advised me to plea[d]. And what I know now about my case I didn't know at that time because I didn't receive a Rule 5 until I was locked up in prison.

3

**<u>Discussion</u>**

**A) <u>Anti-Terrorism and Effective Death Penalty Act ("AEDPA") Statute of Limitations</u>**

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA.  The AEDPA became effective on April 24, 1996.  The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts.  One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions.  Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not at the end of collateral review.  <u>Harris v. Hutchinson</u>, 209 F.3d 325, 327 (4th Cir.

2000).  In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction.

Rule 203(b)(2), SCACR.  Thus if a defendant does not file a direct appeal, his conviction becomes

final ten days after the adjudication of guilt.  <u>Crawley v. Catoe</u>, 257 F.3d 395 (4th Cir. 2001).  If a

defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days

after the final ruling of the South Carolina Supreme Court.  <u>Harris</u>, 209 F.3d at 328, n. 1 (conviction

become final on the expiration of the 90-day period to seek review by the United States Supreme

Court).

  The statute of limitations is tolled during the period that "a properly filed application for State

post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."

28 U.S.C. § 2244(d)(2).  The statute of limitations is tolled for the entire period of the state post-

conviction process, "from initial filing to final disposition by the highest state court (whether decision

on the merits, denial of certiorari, or expiration of the period of time to seek further appellate

review)."  <u>Taylor v. Lee</u>, 196 F.3d 557, 561 (4th Cir. 1999).  Following the denial of relief in the state

courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United

States Supreme Court, nor the time a petition for certiorari is considered by the United States

Supreme Court, is tolled."  <u>Crawley v. Catoe</u>, 258 F.3d at 399.  A state collateral proceeding must

be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply.  "(A)n

application is 'properly filed' when its delivery and acceptance are in compliance with the applicable

laws and rules governing filings.  These usually prescribe, for example, the form of the document,

the time limits upon its delivery, the court and office in which it must be lodged, and the requisite

filing fee."  <u>Artuz v. Bennett</u>, 531 U.S. 4, 8 (2000) (footnote omitted).  "When a post-conviction

petition is untimely under state law, 'that [is] the end fo the matter' for purposes of § 2244(d)(2)."

Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a).  Hernandez v. Caldwell, 225 F.3d 435, 439 (4ᵗʰ Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling.  Equitable tolling applies only in "those race instances where–due to circumstances external to the [petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [petitioner]."  Harris, 209 F.3d at 330.  Under § 2244(d), the State bears the burden of asserting the statute of limitations.  Petitioner then bears the burden of establishing the doctrine does not apply.  Hill v. Braxton, 277 F.3d 701 (4ᵗʰ Cir. 2002).  To benefit from the doctrine of equitable tolling, a petitioner must show: (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time.  Rouse v. Lee, 339 F.3d 238 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004).  It is clear that a pro se prisoner's ignorance of the law is not a basis to invoke equitable tolling.  United States v. Sosa, 364 F.3d 507, 512 (4ᵗʰ Cir. 2004).  Likewise, an attorney's mistake in calculating the filing date of the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Harris, 209 F.3d at 331.

Because Tate did not file a direct appeal, his conviction became final on February 23, 2003, ten (10) days after his plea was accepted.  One hundred and thirty-six (136) days of untolled time lapsed before Tate filed his PCR on July 9, 2003.  The statute of limitations was tolled until July 23, 2007 when the Remittitur was returned by the South Carolina Supreme Court.  Based on the record

before this Court, the undersigned concludes that the present petition was filed on April 10, 2008.[3] Thus an additional two hundred and sixty-one (261) days of untolled time lapsed before Tate's petition was filed. A total of three hundred and ninety-seven (397) days of untolled time lapsed between the date Tate's conviction became final and the date he filed his petition in this Court.

Tate does not dispute that his petition is untimely, but he argues he is entitled to equitable tolling. (Petitioner's Response, pp. 3-4). He offers two arguments, neither of which meet the criteria discussed above. First, he argues that since the trial court lacked jurisdiction to accept his plea, the statute of limitations should be tolled. Second, he argues that the statute of limitations should be tolled "because of the many prejudices of confusion of statutes." Tate has not shown that he is entitled to the benefit of the equitable tolling doctrine.

### B) Procedural Bar

Respondent asserts that Tate's claims are procedurally barred because they were not properly presented for review to the South Carolina Supreme Court.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

---

[3]The petition is dated February 10, 2008. However, Tate left blank the date he delivered his petition for mailing to prison authorities. Two envelopes are attached to the original petition. It appears Tate mailed his petition and his application to proceed *in forma pauperis* in separate envelopes. Both envelopes show that they were "Received by Tyger River CI Mailroom on April 10, 2008." They are postmarked April 11, 2008 and were received by the Clerk of Court on April 14, 2008.

### 1.    Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i)  there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  See O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948. In <u>Ex parte Royall</u>, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

<u>Rose v. Lundy</u>, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and <u>Blakeley v. Rabon</u>, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 <u>et seq.</u> A PCR applicant is also required to state all of his grounds for relief in his application. <u>See</u>, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. <u>Simmons v. State</u>, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. <u>Marlar v. State</u>, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually

reached the merits of the claim.[4]  Further, he may present only those claims which have been squarely presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely.  Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims.  See Rose v. Lundy, supra.

### 2.    Procedural Bypass[5]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts.  If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition.  The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings,

---

[4]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances.  See discussion below on procedural bypass.

[5]This concept is sometimes referred to as procedural bar or procedural default.  If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

if a state has procedural rules which bar its courts from considering claims not raised in a timely

fashion.   The two routes of appeal in South Carolina are described above, and the South Carolina

Supreme Court will refuse to consider claims raised in a second appeal which could have been raised

at an earlier time.  Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines

for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the

state courts, the federal court honors that bar.  State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality
> of those decisions, by forcing the defendant to litigate all of his claims
> together, as quickly after trial as the docket will allow, and while the attention
> of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant
> succeeds in showing both 'cause' for noncompliance with the state rule and
> 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac,

456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the

claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be

ignored and the federal court may consider the claim.  Where a petitioner has failed to comply with

state procedural requirements and cannot make the required showing(s) of cause and prejudice,  the

federal courts generally decline to hear the claim.  See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.    Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and

11

is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice").  In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply.  Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.     Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances.  Granberry v. Greer, 481 U.S. 129, 131 (1989).  First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996).  Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim.  In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986).  A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials.  Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th

Cir.), cert. denied, 485 U.S. 1000 (1988).  A petitioner must show reasonable diligence in pursuing his claim to establish cause.  Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996).  Further, the claim of cause must itself be exhausted.  Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice.  Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000).  Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice.  Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), aff'd, 521 U.S. 151 (1997).  To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocense.  Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999).  A petitioner may establish actual innocense as to his guilt, Id., or his sentence.  Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.    Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66.  It is petitioner's burden to raise cause and prejudice or actual innocense.  If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

After denial of the PCR, appellate counsel filed a Johnson petition for writ of certiorari[6] with

---

[6]All appeals from the denial of a PCR application are made by seeking a writ of certiorari from the South Carolina Supreme Court.  See SCACR 227.

the South Carolina Supreme Court.  In Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988), the South Carolina Supreme Court adopted a procedure for appeal where appellate counsel concludes that the PCR applicant has no meritorious grounds to present.  Counsel is required to file the Johnson petition raising any issue which is arguably appealable and requesting leave to withdraw as attorney for the petitioner on appeal.  A copy of the brief is furnished to the applicant and he is notified that he has a specific period of time to furnish further information to the Supreme Court for consideration in making a determination as to the Johnson petition.  The applicant may file a pro se brief raising additional issues.  Foster v. State, 298 S.C. 306, 379 S.E.2d 907 (1989).  In ruling on a Johnson petition for writ of certiorari, the South Carolina Supreme Court necessarily considers the issue or issues raised in the Johnson petition and any issues raised by the applicant in his pro se brief. Further, the South Carolina Supreme Court conducts a review of the record when a Johnson petition is filed.  King v. State, 308 S.C. 348, 417 S.E.2d 868 (1992).  In so doing, the South Carolina Supreme Court will only consider those issues raised by the PCR application upon which evidence was presented **and** were ruled on by the PCR court.  The South Carolina Supreme Court applies a procedural bar to issues which do not meet this criteria.  Under South Carolina law, the PCR court is required to make specific findings of fact and conclusions of law as to each issue raised in the PCR.  See S.C. Code Ann. § 17-27-80 and Rule 52(a) SCRCP.  Bryson v. State, 328 S.C. 236, 493 S.E.2d 500 (1997).  Counsel is required to object to any deficiencies in the order of the PCR court by making a motion to alter or amend the judgment pursuant to rule 59(e), SCRCP.  McCullough v. State, 320 S.C. 270, 464 S.E.2d 340 (1995).  If counsel fails to make such a motion, the South Carolina Supreme Court will apply a procedural bar to any issue not addressed in the order of the PCR court. Marlar v. State, 375 S.C. 407, 410, 653 S.E.2d 266, 267 (2007); Gambrell v. Bazzle, 2008

14

WL 269505, * 4-5 (D.S.C.).

Thus, when considering a <u>Johnson</u> petition, the South Carolina Supreme Court will only address the issues specifically ruled on by the PCR court which are raised in the <u>Johnson</u> petition and the *pro se* brief or petition submitted by the applicant.  The Supreme Court will apply a procedural bar to all other issues.

None of the issues raised in the present petition were included in the <u>Johnson</u> petition. Tate's *pro se* brief is not included in the record. The PCR court addressed Tate's claims that his plea was involuntary, that his attorney was ineffective for allowing him to plead guilty, and that the trial court lacked subject matter jurisdiction.

**C)  <u>The Merits</u>**

Alternatively, Respondent asserts that even if the present petition is timely and contains properly exhausted claims, Tate is not entitled to relief.

Since Tate filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  See <u>Williams</u>

v. Taylor, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court

must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20.  Ultimately, a federal habeas court must determine whether "the state court's

application of clearly established federal law was objectively unreasonable."  Id. at 1521.

### 1.  Ineffective Assistance of Trial Counsel

Tate appears to assert that his attorney failed to investigate his case and raise jurisdictional

challenges. The Sixth Amendment to the United States Constitution guarantees a defendant the right

to effective assistance of counsel in a criminal prosecution.  McMann v. Richardson, 397 U.S. 759,

771 n.14 (1970).  In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States

Supreme Court set forth two factors that must be considered in evaluating claims for ineffective

assistance of counsel.  A petitioner must first show that his counsel committed error.  If an error can

be shown, the court must consider whether the commission of an error resulted in prejudice to the

defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

### a) Failure to Investigate

An attorney has a duty to make a reasonable factual and legal investigation to develop appropriate defenses. <u>Sneed v. Smith</u>, 670 F.2d 1348 (4th Cir. 1982). The reasonableness of the investigation is evaluated by the totality of the circumstances facing the attorney at the time. <u>Bunch v. Thompson</u>, 949 F.2d 1354 (4th Cir. 1991), *cert. denied*, 505 U.S. 1230 (1992). The Courts recognize limits to investigation based on time, resources, and relevance and conclude that "<u>Strickland</u> does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." <u>Green v. French</u>, 143 F.3d 865, 892 (4th Cir. 1998), *abrogated on other grounds* by <u>Williams v. Taylor</u>, 529 U.S. 362 (1998). A decision not to investigate a particular avenue of defense is assessed by the same standard of "reasonableness in all the circumstances" by which an attorney's performance is measured in other areas. <u>Strickland</u>, 466 U.S. 690-91. A petitioner asserting a claim of ineffectiveness of counsel in failing to investigate must make a showing that the failure was prejudicial. Generally, the failure to investigate and present a potential alibi witness supports a claim of ineffective assistance of counsel. However, at the PCR hearing, the petitioner must present evidence establishing what the witness would have said at trial. <u>Bassette v. Thompson</u>, 915 F.2d 932 (4th Cir. 1990), *cert. denied*, 499 U.S. 982 (1991).

The basis for this claim is unclear and it was not addressed by the PCR court. At one point in his PCR testimony Tate stated that he told his attorney about alibi witnesses but they are not identified. (App. 73). No potential alibi witnesses testified at the PCR hearing.

### b) Subject Matter Jurisdiction

Tate appears to argue that his attorney was ineffective for failing to challenge the subject matter jurisdiction of the trial court. (*See* App. 68). This claim was not addressed by the PCR court.

18

However, the PCR court did reject Tate's claim that the trial court lacked subject matter jurisdiction. (App. 98). This finding defeats a claim of ineffective assistance of counsel for failing to object to subject matter jurisdiction. *See* discussion below.

## 2. Lack of Subject Matter Jurisdiction

The PCR court found that Tate's "allegation that the court lacked subject matter jurisdiction based on some speculation regarding the grand jury proceeding is wholly without merit." (App. 98). The criminal jurisdiction of the Circuit Courts in South Carolina is established by Article V, § 11 of the South Carolina Constitution ("The Circuit Court shall be a general trial court with original jurisdiction in ...criminal cases"). Subject matter jurisdiction is the authority of a court to hear and determine cases of the general class to which the proceedings in question belong. Dove v. Gold Kist, Inc., 442 S.E.2d 598 (S.C. 1994) and State v. Gentry, 610 S.E.2d 494, 498 (S.C. 2005). The Circuit Court gains subject matter jurisdiction in a criminal case in one of three ways: "(1) the grand jury true bills an indictment which sufficiently states the offense; (2) the defendant waives presentment in writing; or (3) the offense is a lesser included offense of a crime adequately charged in a true bill of indictment." State v. Gonzales, 600 S.E.2d 122, 124 (Ct. App. 2004).

A court's jurisdiction over the subject matter of a proceeding before it is fundamental. A party may raise lack of subject matter jurisdiction at any time, including on appeal for the first time. Further, the court may raise the issue *sua sponte*. Lack of subject matter jurisdiction may not be waived by the parties. Brown v. State, 540 S.E.2d 846 (S.C. 2001). The acts of a court which lacks subject matter jurisdiction are void. State v. Funderburk, 191 S.E.2d 250 (S.C. 1972).

Since a state defines the subject matter jurisdiction of its courts, a challenge on the basis of lack of subject matter jurisdiction is a quintessential question of state law. Thus, the frequently

quoted maximum that a criminal defendant can raise the issue of lack of subject matter jurisdiction at any time should actually be phrased "at any time he is in state court."  In other words, it is up to South Carolina courts to resolve issues as to whether or not subject matter jurisdiction exists.  This court does not review determinations of state law made by South Carolina courts.  See Pulley v. Harris, 465 U.S. 37 (1984) ("[A] federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law.").

### 3.  Involuntary Guilty Plea

Ineffective assistance of counsel claims may be asserted in limited circumstances where the petitioner has entered a plea of guilty.  A guilty plea generally precludes the petitioner from challenging defects in the process which occurred prior to the plea.  He "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann."  Tollett v. Henderson, 411 U.S. 258, 267 (1973).  When such a claim is raised, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance.  Hill v. Lockhart, 474 U.S. 52, 56 (1985).

In order to prevail on a claim of ineffective assistance of counsel pertaining to a guilty plea, a petitioner must show that his lawyer's performance was incompetent, i.e., the first prong of the Strickland test.  Under this prong, counsel "has a duty to make  reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at 691.  The prejudice prong of the Strickland test is modified and the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill, 474 U.S. at 59.

A  criminal  defendant  must  be  informed  of  the  direct  consequences  of  his  plea.

Misinformation as to the direct consequences of a plea renders the plea involuntary.  Manley v. U.S., 588 F.2d 79 (4th Cir. 1978) (erroneous statement of court as to maximum possible punishment). Neither the court nor defense counsel is obligated to advise a defendant as to the collateral consequences of a plea.  Strader v. Garrison, 611 F.2d 61 (4th Cir. 1979) (parole eligibility is a collateral consequence of a plea).  "The distinction between 'direct' and 'collateral' consequences of a plea...turns on whether the result represents a definite, immediate and largely  automatic effect on the range of the defendant's punishment."  Cuthrell v. Director, Patuxent Institution, 475 F.2d 1364, 1366 (4th Cir. 1973).

Under these principles, if an attorney substantially misinforms a defendant about the date he will become eligible for parole, and the defendant decides to plead guilty instead of going to trial based on the misinformation, the defendant will be entitled to relief.  Strader, supra; O'Tuel v. Osborne, 706 F.2d 498 (4th Cir. 1983); and Ostrander v. Green, 46 F.3d 347 (4th Cir. 1995).[7]  On the other hand, a plea is involuntary if the defendant is not advised that parole ineligibility will result as a direct consequence of his plea.  Cuthrell, 475 F.2d at 1365-66; Bell v. North Carolina, 576 F.2d 564, 565 (4th Cir. 1978); and Chapman v. Angelone, 187 F.3d 628, 1999 WL 511062 (4th Cir. 1999) (unpublished).

Tate appears to argue that his guilty plea was involuntary because he was unable to review discovery ("Rule 5″) prior to his plea.  The PCR court addressed Tate's claim that his plea was involuntary due to ineffective assistance of counsel in accord with the above precedents, but not on the basis of failure to provide discovery. (App. 97).  Tate has failed to specify what he has learned since his guilty plea which would have been material to his decision to enter the plea.

_____

[7]Ostrander concerned mis-advice about eligibility for a work release program.

### 4.  Violation of 4th, 14th, and 6th Amendment

This claim, like all of Tate's claims, is cryptic and nebulous.  It was not address by the PCR court.

Several issues raised by Tate run throughout the record in this case, none of which would entitle him to relief.  Tate argues that there was no probable cause to arrest him, there was insufficient evidence to support his indictment and insufficient evidence to support a conviction because he did not give law enforcement authorities a confession, but his arrest and prosecution was based only on the statements given by his co-defendants.  Even if Tate could show that his arrest warrants were not supported by probable cause, his prosecution would not be precluded. Gerstein v. Pugh, 420 U.S. 103 (1975).  Such a finding might be sufficient to suppress a post-arrest confession or evidence seized incident to the improper arrest. United States v. Neiswender, 590 SF.2d 1269 (4th Cir. ), *cert. denied* 441 U.S. 963 (1979).  The State would be able to obtain an indictment and prosecute a defendant after a finding of lack of probable cause.  Generally, a defendant may not challenge a facially valid indictment on the basis that the evidence submitted to the grant jury was insufficient, hearsay, incompetent, or illegally obtained. United States v. Calandra, 414 U.S. 338 (1974) and Costello v. United States, 350 U.S. 359 (1956).   Last, uncorroborated testimony of an accomplice, by itself, can serve as the basis of a conviction. United States v. Burns, 990 F.2d 1426, 1439, *cert. denied*, 508 U.S. 967 (1993).

### Conclusion

Based on a review of the record, it is recommended that Respondent's motion for summary

judgment be **granted**, and the petition **dismissed** without an evidentiary hearing**.**



_____
Joseph R. McCrorey
United States Magistrate Judge

February 19, 2009
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).